E-FILED
Tuesday, 11 October, 2016  10:26:30 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL MULDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14 -CV-3274 |
| | ) | |
| JAMES C. CLAYTON,[1] et al., | ) | |
| Defendants. | ) | |

**OPINION**

**MICHAEL M. MIHM, U.S. District Judge.**

Plaintiff proceeds pro se from his detention in the Rushville Treatment and Detention Center.  He claims that Defendants placed him at risk of a sexual assault or harassment through rooming placements, refused to move him when he reported he was being sexually assaulted and sexually harassed by roommates, and then retaliated against him for reporting that assault and harassment.

There are eighteen defendants, falling into two camps:  the Illinois Department of Human Services employees (DHS defendants) and the Liberty Healthcare employees (Liberty Defendants).  Only the Liberty Defendants have moved for summary judgment, the motion now before the Court.  The Court directed the DHS

---

[1] The "Schuyler County Sheriff's Police" was named as the lead defendant in the complaint, but this defendant was dismissed on March 12, 2015.

Defendants to file a summary judgment motion or to identify the material factual disputes, but the DHS Defendants responded that the record is not developed enough to do so (d/e 54).

After reviewing the parties' submissions on summary judgment, the Court concludes disputed material facts exist which preclude summary judgment for the Liberty Defendants.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010). At the summary judgment stage, the evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

2

## FACTS

These facts are set forth in the light most favorable to Plaintiff for purposes of this order only.

Plaintiff has been detained at the Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Act for over seven years, since May 2009.  To be civilly committed under this Act, a jury or judge must find beyond a reasonable doubt that an individual is a "sexually violent person"—a person who "has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of a sexually violent offense by reason of insanity and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence."  725 ILCS 207/35(d)(1); 725 ILCS 207/5(f).

Plaintiff's clinical treatment team during the relevant time included Defendant Ganz, Louck, and Shroeder.  Defendant Ganz was Plaintiff's primary therapist; Defendant Louck was the team leader of Plaintiff's treatment team; and Defendant Shroeder was a clinical therapist on Plaintiff's treatment team.  Defendant Jumper is the Clinical Director, overseeing the clinical treatment and

3

rehabilitation programs.  These four defendants are employed by Liberty Healthcare Corporation (Liberty Defendants) and are the only defendants who filed a summary judgment motion.

In 2010, Plaintiff was roomed with resident Eric Smith, who made sexual advances to Plaintiff at night while both of them were locked in the room, including "rubbing [Plaintiff's] legs, propositioning [Plaintiff] for oral sex, grabbing [Plaintiff's] butt, and . . . continu[ing] to play with [Plaintiff's] feet when they were hanging off the top bunk . . . ."  (Pl.'s Dep. p. 17.)  Plaintiff reported the problem to the clinical staff and to security and was removed from the situation about one and ½ weeks later.  (Pl.'s Dep. p. 20.) [2]

Sometime in 2011 or the early part of 2012, Plaintiff was roomed with resident Lawrence Hayes.  According to Plaintiff, Hayes "manipulated and forced [Plaintiff] into sexual contact with him— which was anal—anal sex and oral sex."  (Pl.'s Dep. p. 74.)  Hayes manipulated Plaintiff with "trickery type comments like, 'I won't hurt you.  I'll go easy on you.'"  Id.  Plaintiff asked Defendants Hankins for a new room assignment but did not report the assault to Hankins at this time because Plaintiff was scared. (Pl.'s Dep. p. 73-

---

[2] Defendant Ganz was the only Liberty Defendant on Plaintiff's treatment team during this incident.

74.)  Plaintiff did not tell anyone about the assault until after Plaintiff was moved to a different room.  Several weeks after he was moved out of the room, Plaintiff discussed the assault with his clinical team, which included Defendant Ganz.  (Pl.'s Dep. p. 72.) Plaintiff was advised to talk about the incident in group therapy.  Id.

In 2014, Plaintiff was once again roomed with resident Eric Smith for a few weeks, and Smith again started making verbal sexual advances.  (Pl.'s Dep. pp. 21, 28, 31.)  Plaintiff complained to Defendant Hankins, who did not move Plaintiff, and also to Defendant Ganz, who took no action.   Plaintiff then filed a grievance claiming Smith as an enemy and was moved out of the room.  (Pl.'s Dep. pp. 21-23, 32, 33.)  By this time, resident Smith had also requested a room change, accusing Plaintiff of threatening him. (Pl.'s Dep. pp. 62-63.)

In the Fall of 2014, Plaintiff requested to room with resident David Mackel.  Plaintiff knew that Mackel was sexually active, but Plaintiff and had Mackel agreed that, as a condition of rooming together, Mackel would not attempt to engage in any sexual activities with Plaintiff.  Plaintiff believed Mackel's promise because Mackel was involved in a relationship with another resident at the

5

time.  (Pl.'s Dep. pp. 23-24, 94.)  Unfortunately, Mackel did not keep his promise.  Mackel repeatedly masturbated at night in front of Plaintiff, pressured Plaintiff for oral and anal sex, and once reached down Plaintiff's pants and grabbed Plaintiff's testicles.

Plaintiff reported resident Mackel's behavior to staff but no action was taken.  One day, Plaintiff had his room window covered during the day in order to sleep, and Defendant Morton commented loudly in front of everyone that Plaintiff would not need to sleep during the day "if [Plaintiff] wasn't up all night sucking dick."  (Pl.'s Dep. pp. 24-27.)

Plaintiff continued to report resident Mackel's behavior to staff and his clinical treatment team, including Defendants Dougherty, Hankins, Kindhart, Culhan, Morton, Teel, Thomas, Louck, Ganz, and Shroeder, but Plaintiff was not moved from the room.  (Pl.'s Dep. pp. 2, 11, 12, 14, 29, 35, 91.)  Defendant Ganz told Plaintiff to talk about the incident in group therapy.  (Pl.'s Dep. p. 80.)  Defendant Louck filled out an incident report regarding Plaintiff's allegations and sent an email to Defendant Jumper.  (Louck Aff. para. 6.)[3] Louck avers that the "standard protocol was followed regarding

------

[3] The documents referred to in Defendant Louck's affidavit are not a part of the record.

6

[Plaintiff's] report of the alleged assault" but does not set forth the protocol.  (Louck Aff. para. 28.)

After about two or three weeks of enduring Mackel's advances, Plaintiff refused to room with Mackel.  Plaintiff was written a disciplinary report for interfering with facility operations and was moved to segregation.  (Jumper Aff. para. 11.)  At a disciplinary committee hearing, Plaintiff told Defendants Jumper and Clark about resident Mackel's sexual harassment and sexual assault.  Jumper and Clark found Plaintiff guilty of interfering with facility operations.[4]  (Jumper Aff. para. 36.)  Defendant Jumper avers that he believed that Plaintiff was trying to manipulate his rooming assignment by making false accusations against resident Mackel.  (Jumper Aff. para. 12.)  Plaintiff agrees that he has requested room changes more than 20 times since 2009.  (Undisp. Fact 33.)  Plaintiff also admitted in his deposition that Plaintiff had sexually assaulted another roommate who is not a part of this case.  (Pl.'s Dep. pp. 92-93.)  The list of residents with whom Plaintiff would refuse to room "would be quite lengthy."  (Pl.'s Dep. p. 120.)

---

[4] The documents relating to Plaintiff's discipline are not in the record.

While Plaintiff was in segregation, resident Morales slid a note under Plaintiff's door offering to pay Plaintiff money if Plaintiff would allow Morales to sexually abuse Plaintiff. Plaintiff turned the note over to security and told Defendants Rose and Pennock but nothing was done to Plaintiff's knowledge. (Compl. para. 10; Pl.'s Dep. p. 13.) Plaintiff also asked Defendants Rose, Pennock, Parsons, and Billingsley and several other Defendants to contact police to report Mackel's sexual assault or to allow Plaintiff to do so, but Plaintiff says those requests were denied. (Pl.'s Dep. p. 9, 13). Plaintiff asserts that he could not call the police because the police were not on Plaintiff's authorized caller list. Plaintiff also asserts that he had no means of obtaining the address for the police.

After Plaintiff was removed from Mackel's room, Defendant Clayton (an internal investigator) interviewed Plaintiff about Plaintiff's claim that resident Mackel had sexually assaulted Plaintiff. According to Plaintiff, Defendant Clayton threatened to send Plaintiff to prison for making false charges if Plaintiff tried to report the assault to police. (Compl. para. 12.) Clayton threatened to arrange for Plaintiff's transfer to the Stateville "E house" prison

with the "Kings" so that Plaintiff would not come back alive.  (Pl.'s Dep. pp. 9, 10, 126.)

Mental health progress notes for resident Mackel support an inference that, before Mackel's placement with Plaintiff, Mackel had a documented history of "sexual propositioning/interactions with other residents," sexually acting out with his roommate, "sexual talk and sexually proposition[ing] others on a regular basis," "crossing physical boundaries with others," and sexual grooming of at least one roommate.  (d/e 58-4, pp. 1-10.)

Plaintiff contends that resident Mackel's assault and Defendants' response have caused a return of his symptoms of post-traumatic stress disorder (PTSD)—"nightmares, extreme paranoia, shakes, bouts of anger, night terrors."  (Pl.'s Dep. p. 100.)  He alleges in his complaint that he asked Defendants Ganz, Louck, and Schroeder for trauma or abuse treatment because he "could not sleep, had difficulty doing everything and my hands had not stopped shaking for days."  (Compl. para. 16.)  He alleges that Dr. Schroeder told Plaintiff that no group treatment for trauma or abuse was available and advised Plaintiff to "'burn off that aggression'" because the aggression was the cause of Plaintiff's shaking hands.  Id.

Plaintiff contends that he was diagnosed with PTSD prior to his detention, but he offers no records to corroborate that diagnosis. The Liberty Defendants aver that they are unaware of any diagnosis of PTSD, did not observe Plaintiff exhibit any signs of PTSD, and are of the opinion that Plaintiff does not have PTSD.  The Liberty Defendants also aver that the sex offender treatment provided is designed to incorporate treatment for the kinds of symptoms Plaintiff is having.  Defendant Jumper avers that the sex offender therapy provided "includes a component for trauma treatment associated with [residents'] sexual abuse history" and a "component to address the residents' personal issues because most, if not all, residents have suffered some sort of abuse or trauma themselves." (Jumper Aff. para. 25; Louck Aff. paras. 16, 17 ("Individualized treatment is provided as part of his sex offender treatment and trauma can be addressed within the context of the greater sex offender treatment program.")  Plaintiff did at some point talk to a psychiatrist on site, Dr. Tinwalla, who told Plaintiff to talk about the issues in group therapy and to talk to Dr. Tinwalla again if necessary.  (Pl.'s Dep. p. 103.)

10

## ANALYSIS

The Court identified the following constitutional claims from Plaintiff's complaint:  (1) deliberate indifference to a substantial risk of serious harm; (2) deliberate indifference to a serious need for mental health treatment; and (3) retaliation for Plaintiff's exercise of his First Amendment rights.  (3/12/15 Order.)

**I.  The statute of limitations bars Plaintiff's failure to protect claims regarding the 2010 assault by resident Smith and the 2012 assault by resident Hayes, but Plaintiff's other claims are not barred.  The 2010 and 2012 assaults may still be admissible for other purposes.**

A two-year statute of limitations governs federal civil rights claims in Illinois.  Bryant v. City of Chicago, 746 F.3d 239, 241 (7th Cir. 2014)(In Illinois, section 1983 actions are subject to the two-year statute of limitations in 735 ILCS 5/13-202).  A failure-to-protect claim based on the 2010 is clearly barred, since Plaintiff did not file this case until September 2014.  Plaintiff also seems to concede that a failure-to-protect claim based on the 2012 assault is barred.  (Pl.'s Resp. p. 12.)

Plaintiff argues in his response that, though the Hayes' incident occurred more than two years before he filed this case, the incident is still relevant.  Id.  The Court agrees.  Both the 2010 and

11

the 2012 incidents could be relevant to the deliberate indifference inquiry.  For example, Plaintiff told his treatment team about the 2010 incident, which is evidence of Defendants' knowledge of that incident.  Plaintiff was roomed with Smith again in 2014, and, according to Plaintiff, the Liberty Defendants would have had to approve this placement.  The Liberty Defendants also knew about the Hayes incident, according to Plaintiff, which could be relevant to show Defendants' knowledge of Plaintiff's mental health needs.

**II.  A rational juror could find that the Liberty Defendants were deliberately indifferent to a substantial risk of serious harm to Plaintiff from residents Smith and Mackel.**

As a civil detainee, Plaintiff's constitutional claims stem from the Fourteenth Amendment, but the legal standard is the same as the Eighth Amendment standard:  deliberate indifference to a substantial risk of serious harm.  <u>Brown v. Budz</u>, 398 F.3d 904, 909-916 (7th Cir. 2005)(detainee awaiting civil commitment under Sexually Violent Persons Act).  The Liberty Defendants do not argue that the sexual assault and sexual harassment Plaintiff endured was not a serious harm.  They instead focus on the argument that they

12

were not deliberately indifferent.[5]  Deliberate indifference is the disregard of a known and excessive risk.  <u>Budz</u>, 398 F.3d at 913.

The Liberty Defendants argue that they had no knowledge of a substantial risk of harm to Plaintiff from his roommates.  However, Plaintiff testified that he repeatedly informed Defendants of Mackel's sexual assault and sexual harassment and they did nothing except advise Plaintiff to talk about the issue in group therapy.  Defendant Ganz notified Defendant Jumper of Plaintiff's allegations against resident Mackel before the behavior committee meeting, and Defendant Jumper did nothing.  Plaintiff also reported Eric Smith's sexual assault in 2010, yet Plaintiff was again roomed with Smith in 2014.

The Liberty Defendants argue that they had nothing to do with Plaintiff's placement with Smith the second time or placement with Mackel in 2014, but they do not address Plaintiff's contention that

---

[5] Reasonable minds might debate whether the subjective element is or is becoming something less than deliberate indifference, but at this point the difference is immaterial because Plaintiff's claims survive even under the deliberate indifference standard.  In <u>Kingsley v. Hendrickson</u>, 135 S.Ct. 2466, 2473 (2015), the Supreme Court held that a defendant's subjective state of mind in a pretrial detainee's excessive force claim was relevant only to the extent that the defendant's actions were "purposeful or knowing." Id. In <u>Smith v. Dart</u>, 803 F.3d 304, n. 2 (7th Cir. 2015), a pretrial detainee conditions of confinement claim, the Seventh Circuit cited <u>Kingsley</u> for the proposition that the subjective element required "a purposeful, a knowing, or possibly a reckless state of mind." The Seventh Circuit has recently remarked on the "shifting sands of present-day case authority" for the constitutional claims of detainees. <u>Werner v. Wall</u>, --- F.3d ---, 2016 WL 4555610 (7th Cir. 2016).

rooming assignments are subject to approval by a resident's

treatment team.  Resident Mackel's progress notes allow an

inference that the treatment team makes recommendations or is

otherwise involved in rooming decisions.  (d/e 58-4, p. 8.)  A juror

could find that the Liberty Defendants knew about Mackel's history

and Plaintiff's vulnerability to sexual assault and harassment (if

Plaintiff is believed), and did nothing to stop the rooming placements

with Mackel or Smith or to move Plaintiff out of those situations

after Plaintiff informed them of the problems.  A jury could also find

for Defendants, but that only demonstrates that a jury trial is

necessary.

**III.  A rational juror could find that the Liberty Defendants were deliberately indifferent to Plaintiff's serious mental health needs.**

Deliberate indifference to a detainee's serious mental health

needs violates the detainee's Fourteenth Amendment rights.  Smego

v. Mitchell, 723 F.3d 752, 756 (7th Cir. 2013)(dental care); Smego v.

Payne, 469 Fed.Appx. 470 (7th Cir.2012)(nonprecedential)

(defendants did not dispute that sexually violent person's mental

disorder constituted a serious medical need).  With regard to

14

Plaintiff's mental health treatment, the exercise of professional

judgment within acceptable bounds does not arise to deliberate

indifference.  Youngberg v. Romeo, 457 U.S. 307, 323

(1982)(decisions by professionals about mental health facility's

operations afforded deference and violate the Constitution only if

professional judgment not exercised); Sain v. Wood, 512 F.3d 886,

893 (7th Cir. 2008)(Deliberate indifference can be inferred if a

medical professional's decisions are "'such a substantial departure

from accepted professional judgment, practice, or standards, as to

demonstrate that the person responsible actually did not base the

decision on such a judgment.'")(quoted cite omitted).

Looking at the evidence in Plaintiff's favor, a jury could find

that the Liberty Defendants did not believe, did not take seriously,

or simply did not care about Plaintiff's report of sexual assaults by

Smith, Hayes, and Mackel or Plaintiff's pleas for what Plaintiff

believed to be PTSD—nightmares, sleep disruption, shaking hands,

and paranoia.  A rational juror could find that their response to

Plaintiff's claims and their refusal to offer Plaintiff additional

counseling or treatment was not based on a sincere exercise of

professional judgment.  *See* Hughes v. Scott, 816 F.3d 955 ("staff of

15

an institution that houses and treats persons suffering from mental disorders should be held to understand that they are dealing with psychologically impaired persons."); <u>Smego v. Payne</u>, 469 Fed.Appx. 470 (7th Cir. 2012)(whether primary therapist's refusal to transfer resident to different therapy group was disputed question of fact where resident claimed hostility and a sexual assault by another member of the group); <u>Petties v. Carter</u>, --- F.3d ---, 2016 WL 4631679 (7th Cir. 2016)("To determine if a prison official acted with deliberate indifference, we look into his or her subjective state of mind.")  Summary judgment must be denied because deliberate indifference in this context of this claim turns largely on the credibility of the parties.

### IV.  Plaintiff's retaliation claims against the Liberty Defendants are unclear but cannot be dismissed on this record.

To make out a prima facie First Amendment retaliation claim, Plaintiff must have evidence that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action."  <u>Gomez v.</u>

Randle, 680 F.3d 859, 866 (7th Cir. 2012)(quoted cite omitted).  If
Plaintiff makes this prima facie showing, Defendants must show
that the adverse action would have occurred anyway.  Mays v.
Springborn, 719 F.3d 631, 633 (7th Cir. 2013).  If Defendants meet
this burden, then Plaintiff must show that Defendants' proffered
reason is pretextual, that is, a lie.  Thayer v. Chiczewski, 705 F.3d
237, 250-51 (7th Cir. 2012).

Plaintiff wrote letters to Governor Rauner and Senator Durbin
about the incidents.  He also reported the sexual assaults and
sexual harassment and asked for help with his psychological issues.
All these activities are protected First Amendment activities.

The difficulty is identifying the evidence supporting an
inference of retaliatory motive.  In his deposition, Plaintiff asserts
that the Liberty Defendants retaliated against him by not allowing
Plaintiff to call or contact police, not reporting Plaintiff's allegations,
"covering up" Plaintiff's allegations, and not providing adequate
mental health treatment.  (Pl.'s Dep. p. 106-109.)  Plaintiff's
retaliation count in his complaint focuses on Defendant Clayton
(Compl., Count 3), not the Liberty Defendants.  Plaintiff's response
to the summary judgment motion characterizes all of the Liberty

17

Defendants' actions and inactions as motivated by retaliation for Plaintiff's complaints about the sexual assault and sexual harassment.

Given the subjective determination required in the retaliation claim, the Court cannot confidently grant summary judgment to the Liberty Defendants.  As with Plaintiff's other claims, the Liberty Defendants' subjective motivation is a disputed fact for resolution by a jury.

## V.  The Liberty Defendants are not entitled to qualified immunity.

The Liberty Defendants claim qualified immunity, but they do not mention the Seventh Circuit cases which appear to hold or strongly indicate that qualified immunity is not available for private contractors.  In Zaya v. Sood, --- F.3d ---, 2016 WL 4621045 *4 (7th Cir. 2016), the Seventh Circuit cited those decisions, stating:

> The Supreme Court has held that employees of privately operated prisons may not assert a qualified-immunity defense. *See Richardson v. McKnight*, 521 U.S. 399, 412 (1997). We have construed that holding to extend to employees of private corporations that contract with the state to provide medical care for prison inmates. *See Currie v. Chhabra*, 728 F.3d 626, 631–32 (7th Cir. 2013); *see also Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 794 n.3 (7th Cir. 2014). As an employee of Wexford, a private corporation that contracts with the Illinois Department of

18

Corrections, Dr. Sood asks us to reconsider our earlier decisions.")

The Seventh Circuit then found that reconsideration of those decisions was not necessary because qualified immunity would not be granted regardless.  Id.  The Liberty Defendants do not discuss these decisions or explain why these cases are not controlling.

**IT IS ORDERED:**

1.     The motion for summary judgment by Defendants Ganz, Jumper, Louck, and Schroeder is denied (d/e 48).

2.     This case is referred to the Magistrate Judge for settlement discussions.  If a settlement is not reached, final pretrial and trial dates will be scheduled.

**3.     The clerk is directed to update the docket to reflect that Illinois Assistant Attorney General Darren Price represents Defendant Bert Dees.**

**4.     The clerk is directed to notify the Magistrate Judge of the referral of this case for a settlement conference.**

ENTER: 10/11/2016

FOR THE COURT:

19

**s/Michael M. Mihm**
MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE